28477. A. C. ALEXANDER LUMBER COMPANY *et al. v.* LIVINGSTON *et al.,* executors.

DECIDED NOVEMBER 27, 1940.

*Dykes, Bowers & Dykes,* for plaintiffs in error.

*Fort, Fort & Fort, J. A. Hixon, J. Lewis Ellis,* contra.

STEPHENS, P. J. T. J. Livingston instituted suit to recover damages alleged to have been sustained by him as the result of the

destruction by fire, on April 18, 1936, of his residence, the furniture and certain other property therein located, and certain trees and shrubbery surrounding his residence, which he contends was caused by the negligence of six defendants, including A. C. Alexander Lumber Company and Roy Jones. The plaintiff alleged that a sawmill, owned and operated by the lumber company and located near the plaintiff's residence, was improperly and negligently constructed, was not equipped with the proper spark screen or arrester on the boiler smokestack, and also was improperly operated, causing large sparks or live coals to be emitted from the smokestack and to be carried by the wind to the plaintiff's residence, and setting fire thereto and destroying the household contents and surrounding trees and shrubbery. The plaintiff alleged that the defendant Jones was the fireman and engineer of the lumber company and operated the sawmill machinery and fired the boiler thereof, and that through his negligent operation thereof on the day the plaintiff's home was destroyed, the fire referred to was ignited; that Jones was negligent in firing the boiler with the smokestack and screen or spark arrester out of repair, and without a sufficient and proper screen or spark arrester, and in allowing the steam in the boiler to run so low that it would not propel the sawmill machinery, "and then piling in wood, scantlings, and shavings in great quantities, and stirring the same with a great poker which jarred loose the cinders and live sparks of coal," and also in using "a blower to accelerate the increase in steam desired, and in so doing would cause larger sparks of fire than usual to be emitted from the top of said smokestack and to be blown for a considerable distance, some three or four hundred yards." The plaintiff attached to the petition an itemized list of articles of furniture, personal property, and of jewelry and money, which he claims were in the house and destroyed by the fire, with the claimed value thereof, including the residence valued at $3000, and the trees and shrubbery valued at $450. In all, the plaintiff claimed damages in the sum of $6479.73.

The defendants demurred generally to the petition on the ground that no cause of action was stated, and also because the allegations thereof were "too vague, indefinite, and the petition as a whole fails to specifically state a cause of action or to properly paragraph by numbers the petition as required by law, and all the allegations are simply argumentative and alternative in effect." The defend-

ants also demurred specially to various paragraphs of the petition on the ground, among others, of irrelevancy, vagueness, and indefiniteness; and also on the ground that the joinder of the six defendants as joint tort-feasors in the one suit amounted to a misjoinder of parties and rendered the petition multifarious, and that such petition was duplicitous. The judge sustained the "general and special demurrers" and dismissed the petition "unless amended within ten days from the date of this order." Thereupon the plaintiff "in order to comply with and meet objections raised to the petition by the demurrers . . and to conform and comply" with the order of the court, amended the petition and struck therefrom all of the defendants with the exception of A. C. Alexander Lumber Company and Roy Jones, together with all allegations relative to the defendants stricken. The order of the judge allowing this amendment is as follows: "The foregoing amendment to the original petition in the within made in compliance with the ruling of the court on demurrers of the defendants and to meet the same made, considered, and it is hereby allowed subject to demurrer, and ordered filed as part of the record in said cause." By another amendment on October 31, 1939, in compliance "with the ruling of the court on demurrers of the defendants and . . . in response to objections urged in paragraph 6 of defendants' amended demurrer," the plaintiff alleged notice to the general manager of the lumber company, given about a week before the fire, of the "unsafe condition" of the smokestack and of the negligence of Jones in firing the boiler, and also notified the yard foreman of the company thereof, as well as informing Jones that the operation of the engine at the sawmill threw sparks onto the plaintiff's property.

The defendants filed their objections to the first amendment of October 6, 1939, and also urged their original demurrers to the petition as amended. They objected to such amendment on the ground that it failed to meet the requirements of the order of the court sustaining the general and special demurrers to the petition. Paragraph 6 of these objections set up that the plaintiff in the original petition alleged that the defendants had been notified of "certain defective conditions," but that it was not alleged what officers or employees were notified or who notified them, which allegations were specially demurred to in the original demurrers.

These written objections amounted in effect to a renewal of all the demurrers, both general and special, to the petition as amended. On January 15, 1940, the judge overruled the objections to the first amendment and the renewed demurrers to the petition as amended, and to this judgment the defendants excepted pendente lite.

At the trial it appeared from the evidence that the plaintiff had died testate since the institution of the suit, and that two of his sons and a daughter-in-law were his executors and executrix. The plaintiffs' evidence was to the effect that the residence where their father had lived and which was destroyed by fire on April 18, 1936, was located about 200 feet from the engine and smokestack of the sawmill of the lumber company; that large sparks were frequently emitted from the smokestack and fell in the yard of this residence and upon the porch thereof; that the residence was covered with "heart shingles and the timber was yellow timber," and on the day of the fire a strong wind was blowing from the direction of the sawmill and the weather was dry; that the fire occurred shortly after the noon meal and developed rapidly, so that very little of the contents of the house was saved; that on the day of the fire the sawmill was in operation; that on this day there had been a fire in the fire place of the residence and also in the stove, but that it was a coal fire; that there was no other mill and no other large fire in that neighborhood at that time; that when the fire that destroyed the house was first discovered it was some three or four feet from the chimney on the roof; that the screen or spark arrester on the smokestack of the sawmill was out of repair and had large holes in the screen, so that live sparks or live cinders came out of the smokestack; that "cinders and sparks come out of there at all times;" that "it was pouring out of there all the time when they were operating;" that the mill employees would take a shotgun and shoot the screen in order to knock the cinders out of it, and this would shoot holes in the screen and let the cinders through; that "they poured out them;" that the screen showed no signs of having been repaired since the last time holes were shot through the screen from the ground, which was may be three or four weeks; that at night live sparks would be blown from the mill for a distance, sometimes four or five hundred yards; that the ginhouse, about the same distance as this residence from the sawmill, caught fire one day when the wind was blowing sparks over it; that it

caught fire on the side next to the sawmill, and at a time when there was no fire in the gin boiler; that a barn caught fire sometime before this house was burned; that this barn was not very far from the mill, and some of the mill people came and helped to put that fire out; that at the time the barn caught fire the wind was coming straight across from the smokestack to the barn, and the mill people "had the blower on and the cinders were blowing out there and it was dry and windy;" that the smokestack with the holes in it was seen some twenty-five or thirty minutes before the fire at a time when the sawmill machinery was running, and the "blower was on and operating;" that the operation of the blower created more draft, and the creating of more draft would carry out sparks faster and further; that the operation of the blower makes more steam and makes the fuel burn faster; that at this time shavings were being used, and shavings make more cinders than wood and cause more live sparks to be emitted from the top of the smokestack; and that the screen or spark arrester of the lumber company's smokestack on the day of the fire had holes in it that appeared to be nearly as large as a person's hand.

There was evidence in behalf of the defendants that the sawmill smokestack was equipped with a proper and new spark arrester, which was one of the best of its kind in general use for the operation of similar boilers, and that on the day of the fire no live sparks were seen coming out of the smokestack; that whenever such sparks would come out they would not hit the ground as live sparks, and that the fire which destroyed the residence did not start on top of the roof, as witnesses saw the smoke coming from under the roof at the time the fire was first discovered.

A verdict in favor of the plaintiffs for $1200 with interest from April 18, 1937, was rendered. The defendants moved for a new trial, and by amendment added nine special grounds which were but amplifications of the general grounds. The court overruled the motion, and the defendants excepted.

The allegations of the petition as amended were to the effect that the defendant lumber company and the defendant Jones, as its servant and employee who fired the boiler at the sawmill, were negligent in the manner in which the boiler was fired with shavings and scantlings, and then stirred and "blowed with the blower" in order to rapidly increase the steam in the boiler, causing large

live coals to be emitted from the smokestack, on account of the improper screen or spark arrester and its defective condition, of which they had notice, and that this caused the plaintiff's house to be destroyed by fire. The petition as amended set forth a cause of action and was not subject to general demurrer. There was evidence from which the jury could infer that the fire which destroyed the residence resulted from live sparks or coals emitted from the smokestack of the sawmill, as the result of the improper firing of the boiler with a defective screen or spark arrester on the smokestack, of which the defendants had notice. The special demurrers were that the petition was not paragraphed as required by law, that the allegations of various paragraphs were irrelevant and immaterial and were argumentative and in the alternative, and also that such allegations were vague and indefinite. The petition was also demurred to on the ground of misjoinder of parties. There is no merit in the special demurrers.

The petition set out a cause of action and the evidence supported the verdict for the plaintiffs. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Felton, J., concurs, Sutton, J., concurs in the judgment.*